Morning, Your Honors. Tom Burns on behalf of Mr. Tron. I've agreed with counsel for Mr. Chong to split our time equally, and I've told him to give me a heads up if I get carried away. My hope is to save two minutes for rebuttal. I'd help you out by keeping my eye on the clock as well, but keep track of your own time if you can. Thank you, Your Honor. And my expectation is that counsel for Mr. Chong will be discussing severance. I intend to focus on the search issue, specifically curtilage. The deputies involved in the search in this case engaged in an unlawful parole search. The government tried to salvage the fruits of the search or searches that ensued by relying primarily on an exigency. Specifically, the deputy Lee supposedly saw Mr. Tron throw a baggie that he suspected contained drugs. If you don't have a possessory interest in the land, how can you raise a curtilage argument? Well, in both the Howard and the Granberry cases, this court has held that a guest at a property could raise a parole search argument in those cases. Presumably, the interest there is disallowing unlawful searches at third-party residences, but it also could be disallowing an expansive parole search. But there the allegation is that the search itself was illegal and the fruits of the search is being used against the guest. I understand that the curtilage argument says it's to protect the possessory interest of someone. You can't enter into my property without enough reason. So how does a stranger in the house get to raise the curtilage argument? Well, I would suggest that the curtilage doctrine protects the privacy interest in the home, and then we would go to the standing issue, which is does Mr. Tron as a guest have a privacy interest in another person's home? Does he have a privacy interest in the curtilage? Well, the curtilage is considered a part of the home. It's indistinguishable. It is effectively the home. I think that's in Duenas, this Court's case in Duenas.  Well, I would say the district court implicitly rejected it, certainly did not accept it. Was the argument expressly made? Yes, it was made. So how do we review the district court's implicit rejection, if you will, of the argument that this was not curtilage? As I've indicated in my papers, I think the court could certainly remand for further consideration or for a ruling in that respect. Now I'm asking a different question. Could the district court have reasonably found that you hadn't demonstrated that these officers were in the curtilage? I don't think so. I mean, the officers had testified that they came across the neighbor's lawn, they came over the fence, they came across the front of the house, across the yard, and effectively turned into the garage. Well, but our case law suggests that when you're in areas that people ordinarily travel in, the driveway, the sidewalk, et cetera, that's not a curtilage issue. I would disagree, particularly with respect to the Supreme Court's opinion in Jardine. In Jardine, the government made the argument when the officers were going up there with the dog to do a sniff search that, well, they could have just been going up to the door to knock on the door. And the Supreme Court said, look, the reason that they're going is relevant to our consideration. And the reason here was to do a sniff search. That was the case where they actually went to the front door. Well, here they went into the house. Well, but not – your argument depends on them not being in the curtilage – depends on them being in the curtilage when they saw what happened in the garage, right? Because it – had they – I mean, that's your argument. Your argument is that they entered the curtilage in order to observe what happened in the garage. So the subsequent going into the house is not relevant to the curtilage argument, is it? Well, I think it is under Jardine. Their intent is relevant. But I guess stepping back, more importantly, Jardine, they didn't go into the house either. They went up and sniffed around the house with the dog. Right, right. So my point is that what occurs after one enters the curtilage really isn't relevant. If they're properly on the property, what follows is okay. If they're not properly on the property, then there's a difficulty. So tell me what evidence there was with respect to where they were that would lead us to find that they were not in – that they were in the curtilage as opposed to outside of it. Well, of course, just stepping back from that a step, there was evidence to suggest they were actually in the garage. There was disputed evidence. There was conflicting evidence in that respect. So that's why an evidentiary hearing was – But you didn't ask for an evidentiary hearing for that reason. The only reason your client asked for an evidentiary hearing was to demonstrate that he had no possessory interest in the house because the government had argued this was a parole search. And the court said, I don't need that. I'm not going to find it to be a parole search. I don't believe that that's correct. I think around Chong's excerpt of Record 1, 129 to 140 or so, that there's a discussion of we'd like an evidentiary hearing to figure out exactly where he was. There's also the alternative argument that, well, even if he wasn't in the garage, he was certainly in the curtilage. Is there some place where your client asked for an evidentiary hearing to determine where people were? Yes. Mr. Chong may well have. No, Mr. Tron's counsel was doing most of the talking at the trial hearing. Maybe when you get up for rebuttal, you can identify where. I can't find in the record a request for an evidentiary hearing to the judge from your client for anything except the notion that I want to show that the parole search was no good because this wasn't my house. And the judge says, I'm not going to find it to be a valid parole search, so I don't have to have an evidentiary hearing. Again, I think in the 129 to 131 range of Chong's excerpt, I could be off by a few pages, but that's where the key discussion is going on. I didn't hear, counsel. I'm sorry. Go ahead. I didn't hear your answer to one of Judge Hurwitz's questions because when I look at the photo, this isn't a situation where you've got a long, narrow driveway, and curtilage is really critical in terms of where they were positioned. This is a situation where there's a short driveway, and there's one of the photos where from the interior looking out, it's a short view. So if it's plain view and the doors open, you can see fairly easily. So Judge Hurwitz had asked whether there's any evidence in the record that demonstrates exactly where the officer was standing, and I didn't hear your answer to that. Well, I think you'd have to look at the photos, which are at CER 151 to 53 and 74, and Tron's excerpt of record 91 to 93, and then there's also at CER 2, 275, Deputy Lee is talking about 271 to 72. He says, we came over the fence on the side, crossed in front of the house, and then at CER 2, 295 to 96 and 301, he said, we hugged the residents and came around to the garage door. So it's evident what they're doing. They're trying to avoid the people in the garage seeing them, so they're coming in from the side and swinging around. There's a car parked in the driveway. One of those photos shows the darkness that night. There's a car parked near the garage, so they come around the front of the house, and then they shoot right into the garage there. So he's within a few feet of the threshold of the garage at best when he comes around that corner and allegedly sees the baggie being thrown. Assuming that you did preserve a request for an evidentiary hearing and figure that out, Deputy Lee then testifies at trial. You have a chance to cross-examine as much as you want on some of these issues. Why does it matter anymore whether or not there was an evidentiary hearing? Well, Deputy Lee testifies at trial, and he again says something that suggests that he's actually in the garage, and at that point they renew the motion for suppression of the judge's hearing. Right, so why do you need an evidentiary hearing? You've gotten the testimony that would have come from the evidentiary hearing, and albeit from your perspective it's late in the game, but you've got all your opportunity to object. Well, the problem is the judge doesn't say, but he's still apparently finding he's outside the garage. I would say it doesn't matter one way or another. Let's work this through because Judge Seaborg's point. And if I could just note, I'm over my time. That's okay. Judge Seaborg's point interests me. So you say, I should have had an evidentiary hearing because we should have been able to prove that they were in the garage. And you have a trial, and the two officers who would have testified at the evidentiary hearing testify, and the motion to suppress is renewed, and the judge says denied. So isn't our question whether or not there were – now we're making – now we're reviewing a factual finding by the judge, aren't we, that you haven't shown that there was a Fourth Amendment violation on these facts? Well, I have a few answers to that. Number one, you know, it wouldn't be normal for a defense counsel to start asking questions with respect to a suppression motion during trial unless they were somehow relevant to the trial. They weren't here. When this testimony came out, it was actually during his direct testimony when he was talking about what he did, and he said, you know, upon entry, I think were his words, or when we made entry, we saw the baggie be thrown. And then at a break, defense counsel said, well, Your Honor, once again, he's indicating that he's in the garage when he saw this happen, and renews the motion to suppress, and the judge says, I don't have enough to suppress right now. Well, I don't know what to make of that ruling exactly, but, of course, it's the government's burden to prove the search was valid. I don't know if he's finding – I don't know what he's finding with that finding. But, you know, big picture, I don't know that it matters, because a foot or two outside the garage or inside the garage is clearly within the curtilage. The curtilage – if this – if that – Bagana says a short driveway is curtilage, this is a short driveway. If that's not curtilage there, this house doesn't have curtilage. Just because you don't have a big front lawn, just because you don't have fences, you don't have curtilage. And I refer to the court to Judge Kaczynski's dissent. I think it was in Pineda Moreno. He says, look, you know, even people who can't afford big houses with big fences have curtilage. I'm familiar with that. Why don't you save the rest of the time for a call counsel. Thank you. Thank you. Good morning, Your Honors. John Lemon for Harsin Chong. I'm going to address the severance issue, but before I do that, just briefly, with respect to the court's findings during the trial when the motion was renewed, the district court specifically stated that he wished that they had better – So he expressed that he, again, he's the one that denied the evidentiary hearing. And then he says, well, I really wish we had more evidence on this. And then he goes back and says, but I don't have enough to suppress the search. So he implicitly shifted the burden to the defense. But I'm going to move on to the severance issue now. Mr. Chong's defense of trial was that he was a patsy who did not willfully participate in his uncle Tack Tran's drug dealing. Tran, on the other hand, argued that Mr. Chong was the only guilty person in the courtroom. His counsel repeatedly urged the jury to convict Mr. Chong on the basis of inadmissible evidence, including the videotaped statement. How did you preserve this issue? Did you waive the – did you – remind me, did you make the severance motion? Mr. Tran made the severance motion, right? Mr. Tran's lawyer objected, made the severance motion. It's the same issue. But it may well be the same issue. The question Judge Seaborg asked, and I'm interested in the answer to it, is did your client move for severance? My client did not move for severance. So how can you now argue on appeal? You're arguing that Judge Suis-Ponte should have granted a severance of your client? Among other things. Apparently at trial, your trial counsel was – and I can understand the reasons why – was perfectly happy to have the cases tried together, presumably to argue that the other defendant was the real wrongdoer and not your client. Well, the level of representation that my client received in the district court is another issue that I raised in the open court. And I think that's an issue for a 2255. But my question is, with respect to reviewing the waiver argument, you never made a waiver argument below – I mean, a severance argument below. A couple things. First of all, the idea behind preserving an issue is that it's brought to the district court's attention. This was clearly brought to the district court's attention. By your – by co-defendants. So the district court is sitting there saying, I don't think the co-defendant has made a good severance case. And you're not – nobody on your side is popping up and saying, but we would like one, Your Honor. Again, my client – I'm sorry. He received terrible representation in the district court. Well, is there an evidentiary record that's sufficiently developed for us to take up the ineffective assistance of counsel issue now? Or is there further factual development that would be necessary for that claim? I think it's sufficient on the basis of the entirety of this record. But, you know, I don't really want to get into that now. What I'd like to, again – Well, that's why it's more appropriately handled in the 2255. But let me ask you this. There was a suggestion by your client's counsel that – were you the trial counsel below? No. Okay. There was a suggestion by trial counsel that there might be a duress defense that he was interested in presenting on behalf of Mr. Chong. Was there a specific proffer made, a factual proffer made to the district court? My client's lawyer stated on the morning of trial that it had not occurred to him that there may be – I think he was addressing a notice issue, which doesn't even exist in this context, but that he didn't think about it until he flushed it out on the morning of trial. That was his quote. And did not expressly proffer a specific duress defense. But, again, this court has held on numerous occasions that as long – there's no requirement to raise an argument that would be futile, that the court has already ruled on it. The court had already denied severance on the basis of the exact same issue that was raised by the co-defendant. And even if we go to plain error – No, but that argument eats up the entire rule that you need to renew it. The judge – it struck me here that the judge was fairly thoughtful on this issue. He originally said, I think I ought to grant it. And then said, so what's the defense going to be? And nobody made a proffer that he thought was sufficient. So he said, no, I'm not going to grant it. And so why would it have been – I'm sorry, I don't think that's actually what happened. He did initially – Well, he did initially grant it, and then he changed his mind. His basis for changing his mind was that he didn't want the government to have to try the case twice. Well, he – but he did say on the record, I don't think you've made a sufficient proffer of a defense that would be antagonistic. Did he not? I think that came – I'm not sure when that came. He did make – he did make some finding, but I think that actually came before he granted the severance and then reversed it. But my point is that since the judge went back and forth on this issue, why would it have been futile – you never raised it once, but why would it have been futile not to raise it at the close of evidence? You – I don't mean you. I understand somebody else represented this defendant. Yeah, I mean, again, the issue was – the court has a duty to be the gatekeeper here, and there's – Right, but there's no – you can't criticize the district court's analysis if you didn't make – you, not you – if the other trial counsel didn't, on behalf of Mr. Chong, make a factual proffer that the district court could have to analyze. And so now you're saying the district court should have thought of it on his own. A couple quick points. The district court was aware of the issue. The district court specifically noted that the defendants were pointing their fingers at each other. The district court has a duty to be a gatekeeper and to supervise the conduct of the trial. And I think I cited an out-of-circuit case where the – I think it was the Fifth Circuit or maybe the Tenth held exactly that, that even in the absence of an objection, a trial court in circumstances like this has an obligation to be vigilant. And then finally, even under plain error review, which is what we would get to, there is manifest prejudice here. This prosecutor – I'm sorry, this defense attorney for Mr. Tran was a second prosecutor in the room. Well, let me ask you just – this notion you said, pointing the finger at each other, and I don't disagree with you that there are certainly indications that's what happened here, but that's not enough for severance. I mean, in this instance, the jury ended up convicting both because there's – it's not mutually exclusive. So why is this substantively a severance case, even with the understanding that at various points they're saying, oh, he did it, he did it. The jury concluded they both did it, and there's certainly sufficient evidence in here to support that notion. Well, the jury concluded they both did it in Tudyk and in Mayfield and in other cases where this court is reversed. But are you saying, in other words, what I'm trying to get at is if there's a point in the trial where the defendants are suggesting that the other person is culpable, you have to have a severance? No. Severance is much more significant – has to have a more significant showing than this, doesn't it? No. It's when acquittal of one defendant would necessarily call for the conviction of the other, a trial in which each of two defendants – Well, that's not true here, isn't it? You could have – that's not the case here. It is absolutely the case because Mr. Chong was claiming that Mr. Tran was guilty and Mr. Tran was claiming that Mr. Chong was guilty. How did – you say that Mr. Chong was claiming that Mr. Tran was guilty. In what way did he do that? His confession said, I did it all myself. His argument at trial, such as it was, and again we get back to the letter of his representation, is that he was merely Mr. Tran's patsy. Right. Focus on the evidence for me as opposed to the argument. Well, part of the evidence that was excluded was that Mr. Tran was a known gang member and that – But that's not an issue on appeal. Well, it is because it goes to the issue of severance. Well, no. My question is, the evidence presented to the jury, what evidence was presented to the jury of an antagonistic defense, of Mr. Chong saying Mr. Tran did it all? Okay. If I can take a step back, this Court has held that, quote, mutual exclusivity may exist when only one defendant accuses the other and the other denies any involvement. That's a lower standard. What we actually have here – But now, I know what this Court's held. I really want to know the answer to my question. Was there any evidence in front of the jury, at least from your client's side, not from Mr. Tran's side – Mr. Tran had this confession by Mr. Chong, right? So he said, look, he did it all. He said so. But what was the evidence in front of the jury that your client was blaming the other guy and claiming he didn't do it? The argument by – I'm not asking about the argument. I'm asking about the evidence. The evidence was excluded. The evidence of trans-gang affiliation was excluded from the trial. It was excluded because the judge didn't want to sever the two defendants. And you may be right about your argument. I'm just asking a very specific question. Am I not correct in – because I've asked you this question twice – in concluding there was no evidence in front of the jury that led – about one guy accusing the other? Yeah, I just don't – I don't think that that's – Well, you know the record. I don't care whether it's relevant or not. You may think it's not an important point. Just answer my question. Was there any evidence in front of the jury that Mr. Chong was accusing – The district court excluded him because he didn't want to grant a severance. Well, the answer has got to be that there wasn't. But then you're saying that the evidence that would have been presented was excluded. Is that your answer? Yes. Okay, thank you. So that's an easy answer. The answer to my question is no, but we had evidence that we should have been able to get in that we didn't, right? Right. Okay. Okay, thank you. Our questioning is taking you well over time, but I'll put a couple of minutes on the clock for rebuttal. Good morning, counsel. Good morning, Your Honors. May it please the Court, Rosalyn Wang for the United States. I first want to address this issue of the fact that the defendants, both of them had the opportunity to cross-examine Deputy Lee when he was actually on the stand at trial, and neither of them during cross-exam addressed the actual issue that they later brought up. Whether or not they addressed it, here, let me rephrase their argument for you a little bit. They say, we got to cross-examine him, and when we – the evidence – well, he was testified, and his testimony was such that the judge at that point should have granted the motion to suppress, because his testimony indicated that his declaration wasn't accurate. Well, that isn't true. Deputy Lee testifies consistently with his declaration. He always says that he was 10 to 15 feet away when he saw a defendant try and throw the baggie, and then he entered the garage. So it's very clear he's not in the garage when he sees the baggie being thrown. Now, can I ask you a question about who raised what issue? Mr. Tron's motion to suppress is based entirely, as I read it – his written motion is based entirely on the notion that this is not a valid parole search. Correct. And you lost on that issue. Right. Did he ever raise the question of curtilage? Certainly not in the written motions. No. I mean, not explicitly. I guess the way the defense is saying that maybe it was implied because the defense counsel was arguing that they shouldn't have been on the driveway. Well, no, I see an argument from Mr. Chong. Right. It probably encompasses that. My question is, does Mr. Tron make that argument or does he adopt by reference Mr. Chong's arguments? Again, I think it's defendant Tran's counsel who does say, well, the officers were – I don't know exactly how she words it, but it's something like unlawfully on the property or had to already have been on the property. So it's kind of implied, but it's really not very explicit. It's not clear to me from reviewing this record how much evidence there was in terms of where Deputy Lee was standing when he observed Mr. Tran in the garage. The record really states that he is on the driveway and he's 10 to 15 feet away from an open garage door. I mean, no, as to exactly where he's standing, the record doesn't say that. But there's no evidence to contradict Deputy Lee's testimony and his declaration. And both of the – neither of the defendants, both of whom submitted a declaration in support of their motions to suppress, neither of them submit any evidence to the contrary on that fact. And going back to the point at trial when they could have cross-examined him but didn't, Judge Wright says, you know, it appeared to me that you didn't want to ask that final question as to where he was, as to where Deputy Lee was. He says, I felt you were deliberately not asking those questions so that you would have this point to argue. And so if there is any ambiguity in the record, it's because the defendants themselves brought it on. Certainly, Defendant Tran was there at the time. He could have said something in his declaration, but he doesn't. Could I direct your attention to the severance question? Yes. First of all, with respect to who's preserved or not preserved the issue, assuming for a moment that Mr. Tran has preserved the issue for purposes of our consideration, does it matter whether or not Mr. Chung has preserved it or not? I mean, in other words, it's – the court will address it, and if severance – the determination is that severance should have been granted, it affects Mr. Chung. I mean, it does matter because the district court should have had the opportunity to consider the question specific to Defendant Chung. I mean, obviously, his defense, his case is a different one than that of Defendant Tran. And the district court – It doesn't necessarily follow that there would be prejudice to the second defendant. In other words, we might well find – conceivably find that there was prejudice to the defendant who preserved the issue, but not necessarily prejudice to the defendant who didn't. Yes, that's certainly possible. Although there was a suggestion, I think on the first day of trial by Mr. Chung's counsel, that he was considering presenting a duress defense. He was, right. And he's – The court had that to take into consideration when deciding whether the defenses would conflict, right? Right. And the court initially decided, well, I should sever the trial for that reason. And – but then, you know, upon pressing Chung's counsel, Chung's counsel admitted that he didn't have any evidence of immediacy, of an immediate threat that the Ninth Circuit requires in order to put on a duress defense. So is it the government's position that had there been a proffer of a valid duress defense that he wanted to argue to the jury, then severance would have been the appropriate ruling, but that he voluntarily gave up on the duress defense? I – I certainly think there would have been a much stronger case for severance if he had said, I was under duress and this is the only reason. But is it the government's position that it's the giving up on the duress defense that was critical to the ruling? I don't think it was – I mean, there's no evidence at all that there was an immediacy of threat. So – Well, no evidence was presented. But what if – what if – what if at the beginning of the trial, Judge Wynn says, counsel had said, I'm going to put on a duress defense? I think that's a very different situation. Of course it's different. What would the result have been in that circumstance? Probably severance. Yeah. And as you said, the district court was persuaded that had there been a duress defense, now normally the trial court would have fleshed out a little bit by asking for some sort of proffer before making a ruling in a case that suggests that it should probably be tried together. But that issue was never really fleshed out. Well, it was discussed during that pretrial hearing, and Chong's counsel admits at that point that he doesn't have enough to bring a duress defense. And then he asked to argue the fact of gang membership sort of generally as a, I don't know, kind of cultural implied threat, which of course is just a way of him trying to get around the actual requirements of putting on a duress defense. Can I ask a procedural question here? I know that Mr. Tran renewed his motion to suppress. Yes. Did Mr. Tran renew a motion to suppress? He did not. So after the officers testified at trial, Mr. Tran renewed a motion to suppress? Tran's counsel did. Mr. Tran, but not Mr. Chong? Yes, that's correct. On the severance issue again, and duress not being in the equation, as counsel points out, certainly the record does reflect that there was some pointing of fingers at each other. Right. Why is that not effectively an antagonistic defense that requires severance? Not duress, but I didn't do it, he did it. Correct. Right, right. And I think Your Honor said that during the other counsel's argument, which is that under Zafiro, it's simply not enough to simply have antagonistic defenses. There has to be something else. There has to be evidence that was only admissible against one defendant, or evidence that was erroneously admitted at trial, like there was in Mayfield. And I do want to distinguish the facts of this case versus Zafiro, for example, or Tutic, which is in those cases you kind of have this locked room situation where there's a box of drugs, or there's a stab victim, and each defendant says, oh, the other one did it, and nobody really knows what happened. This is not that case. I mean, we had a wiretap. We had Defendant Tran on that wiretap talking about distributing drugs. We have surveillance indicating he was distributing drugs from Chong's house. And then we have this recording where Defendant Tran yells to Defendant Truong, hey, make sure to take responsibility by yourself as one person, all right? And then immediately after that, Defendant Tran signs a written confession. So we actually know the roles of everyone in this particular conspiracy. Like we know how the conspiracy worked. It's not like Zafiro where there's a box and everyone says the box isn't mine, you know. There's no evidence of who knew what was inside the box. So this is a much ñ these facts are much better than in Zafiro. Can I shift to an entirely different subject that hasn't been discussed this morning yet? Yes. And that is that the conference in front of the district judge where Mr. Chong, neither Mr. Chong nor his counsel appeared. And I'm concerned about that because even though there was no motion that Mr. Chong had pending, as I understand it, that was the point of the hearing and it was one of Mr. Tran's motions in limine, the district judge discusses Mr. Chong, the prospect of a continuance motion, makes some comments about how that will be viewed. And, I mean, isn't it troubling that these proceedings are going on without either Mr. Chong or his counsel present? I mean, really the standard is, is there anything on the merits being discussed? Is there anything? Well, there is in the sense of, I mean, anticipating a party's continuance motion and making comments about how that motion is going to be treated. I understand the motion ultimately wasn't made. But isn't that kind of a critical moment when your case is being discussed by the district judge and neither you nor your counsel are there? I mean, I don't agree with that just because, I mean, there are certainly, you know, sentencing hearings when there's only one defendant made and the judge might make some kind of comment about, well, I don't know what the other defendant is going to do. But at that moment it's about that defendant's case. Right. There's no doubt that at the moment this hearing takes place, it is about both defendants' cases because there's going to be a joint trial. But he doesn't say anything of actual substance. It's simply defendant Chong may make a motion for continuance. I don't know. Tron has got a motion in limine pending, right? That's why this conference is. Right, exactly. What's the motion in limine about? It's as to whether or not the drug expert can talk about coded language in the wiretap calls. Isn't that of some relevance to Mr. Chong? But it's a motion that defends. Certainly he's got an interest in how that comes out. Well, Defendant Chong, he does, but Defendant Chong doesn't join in the motion and the fact is that the judge doesn't even ultimately rule on the motion. Should the judge at least have inquired as to where counsel was? As to where counsel was? Yeah. I mean, there's some discussion on the record where. I know the record indicates that counsel knew about the hearing and didn't come to it, but that's a separate issue. Shouldn't the judge have said, I only see counsel for one side here. Let's get on the phone and make sure what's going on here. But, I mean, if it's a motion that only one defendant has brought, I mean, there isn't really any reason for the other defendant. You don't think a motion by one defendant. What if it's a motion to suppress the fruits of the search? If the fruits of the search are suppressed, they're not going to be introduced against the other defendant because he didn't show up at the hearing, are they? Well, you can have related cases before different judges where a motion to suppress affects. Oh, this is one case. This is one case. That's true, but I'm saying generally you don't have to have every single party. I'm back against your argument that just because the motion came from one defendant, it couldn't possibly affect the rights of the other defendant. Well, I think I'm saying at the end of the day, there really wasn't any prejudice. Should have been there, but at the end of the day, nothing. There was no actual. Substance was actually discussed as your argument. Not that he didn't have a right to be there and should have been there. Certainly it's better when all the defendants are there. But let me make sure I understand what happened at this conference. The motion wasn't ruled on. Right. And the judge made some remarks about what he would do if Mr. Chong ever filed a motion for continuance. Right. And Mr. Chong doesn't file a motion for continuance. Correct. Do you think the judge's statements may have had some effect on that? No. Didn't the judge sort of say if he files one, he's going to be in trouble? I don't think that's what he says. I know. I'm rephrasing. Oh, okay. What did he say about the motion for continuance? I'm looking forward to him filing one. I mean, there's certainly no. He certainly gave some indication on the merits of how a motion for continuance would have been greeted. A strong hint. A preview of how he would view it. And doesn't Mr. Chong have the right to be there to say to the judge at that point, wait a minute, judge, I haven't decided to file one yet, but if I do, you're wrong about your presuppositions here. I mean, again, a district judge can make comments about another defendant during any of the other defendant's hearings. He can make comments about. You might persuade me with your argument that no prejudice resulted. I'm having more difficulty with your argument that this was all perfectly okay. Again, I'm saying it certainly would have been better for both defendants to have been there. But yes, ultimately, there really wasn't any prejudice to Defendant Chong. Anything further? No, thank you, Your Honor. Thank you. You wanted to save two minutes? Yes. I put that back on the clock. Thank you. Judge Hurwitz, you asked some questions. Yeah, kind of. Let me just, now that I've had time to look at the record, too. I see two written motions from your client, both of which focus only on the parole search. So tell me where your client raised a curtilage argument in the record. Okay. So what happens is my client raises a parole search challenge because that's what the discovery indicates has happened, a parole search. Government response is parole search is fine, but as a backup, they raise exigency and they put in a footnote, no curtilage because it's not blocked off. Normally in the district court, there's not a reply brief file. So counsel comes to the hearing and says on page 129 of Chong's excerpt, with respect to the exigent circumstances, and tries to explain to the judge, look, these officers are already on the property. The search is illegal. The judge a couple times interrupts her and says it doesn't matter because they can see from the street. The judge is adopting the government's argument with respect to the curtilage. The government even reiterates its argument on page 134. When you say counsel says that, you mean counsel for your client? Yes. On page 129? Yes. With respect to the exigent circumstances and tries to argue, look, they're already on the property. The judge cuts her off twice, adopts the government's curtilage argument. The government reiterates its curtilage argument at 134, says you got it right, judge. So now let's get back to your renewed motion later on in the trial doesn't raise this again, correct? Your renewed motion to suppress focuses only on the parole issue? Well, the renewed motion, no, I think it focuses actually on the exigent circumstances. Is there a written renewed motion or just oral? No, no. Does your oral renewed motion say, raise the curtilage issue? During the trial at 295, Deputy Lee says, upon entry. No, I know what Deputy Lee said. My question is, does your renewed motion raise it? Well, I think what she's saying is instead, look, they're not just in the curtilage, they're actually in the garage. I understand what she's saying. I'm asking, you're answering a different question than the one I'm asking. I'm sorry. You make a renewed motion to suppress? Yes. When you make that renewed motion to suppress, do you say there should be suppression because they were inside the curtilage? Well, it said the CER 2, Chong's excerpt 2, 327 to 28. I don't recall the exact language. I'll look at that. If that's where it is, I'll look at it. But I think it's not that they're in the curtilage. I think what the point is that they're actually in the garage. They're not just in the curtilage. Now, let me ask the question that Judge Wynn was trying to ask before because we have a picture there of the driveway. It's right on the street. It's a 20-foot driveway? That's probably a good estimate, maybe 25, 30. But certainly not a long one. No. And there's some indication, not every officer. In fact, you're relying on one officer who says we were so far away, I'm not sure how well I could see. So there's some indication in the record from which a judge can find that they weren't standing up next to the house at the time. Why isn't that enough, given the fact that these guys were cross-examined at trial or subject to cross-examination at trial, for the judge, for us to say there was a basis for the judge's denial of the motion? I think, actually, if you go through the testimony at trial, what they say is they came across the fence, they came across the front yard, they're already in the curtilage there, and then they came right up to the garage. Not that they took some circuitous route. No, actually, you have one person because you rely on it in a different context, saying I'm not sure how well I could see because we were not that close. There's one guy who does the initial stakeout all by himself while the other deputies wait about a block away. He's there for about three hours, and he's at a distance watching the house. It's not clear, but it doesn't appear he's there when the other officers storm the house. So that's the guy that I'm relying on. Now, I'd point out, too, on 297 that the government cited where there's 10 to 15 feet distance, what the deputy is saying is I'm 10 to 15 feet from Mr. Tron, not from the threshold of the garage. So it makes perfect sense. He comes around the corner of the garage, he looks in the garage. Mr. Tron, he's back in the garage. Now, we do have a ñ I went and looked for it while you were up. There is a Ninth Circuit case that says that in order to raise a curtilage argument, you must have a possessory interest in the property. Do you think that case has been overruled? What year is that, Your Honor? I'll give you the ñ well, whatever it is. 2015. 2015. I'm not familiar with that case. My take on it would be ñ Lyall v. City of Los Angeles, L-Y-A-L-L, 807-F30-1178. I'll have to take a look at that and maybe file a 28-J. My take on it from Supreme Court case law and from, you know, Howard and Granberry allow a nonresident to raise ñ Church arguments but not curtilage arguments. Well, but, again, the Supreme Court's been very clear in Oliver and a number of other cases that the curtilage is the house. So I don't ñ But our questioning has taken you well over your time. Let me see if ñ I don't have any other questions. Any additional questions? All right. I was also trying to reserve a couple of minutes. Fair enough. Thank you. I'll try to be fast. First of all, Judge Hurwitz, I answered your question that you repeatedly asked me and I wasn't answering, I guess. I answered it incorrectly. There was actually evidence that Mr. Chong was being manipulated by Mr. Tran in this case because there was the recording of him repeatedly cajoling my client from a different squad car to take the fall for it. He kept saying, you've got a clean record, I'll get you a lawyer, and making statements to basically ñ he was telling Chong to confess. So there actually was evidence supporting Chong's defense that wasn't evidence. I don't think it's repeatedly. Yes. I think it was one instance, didn't he yell over and say, admit it's yours? Is there ñ Well, it was ñ There was more than that? It was ñ my recollection is it was more than once, but certainly the agent stated on cross-examination that there was no question that Tran told Chong to, quote, take the fall for it, unquote. The second quick thing I wanted to touch on is, with respect to the district court's basis for reversing itself regarding severance, it was because he didn't want the government to have to try the case twice, and the remedy was to exclude some of Chong's evidence, which was that Tran was a gang member. So what he did was he excluded the evidence that Tran was a gang member and reversed himself on the issue of the severance. And just on that point, I know you wrap it up into your severance argument, but you don't make a separate argument that the judge abused his discretion in excluding that evidence, do you? I mean, no, I think it's part of the severance, so no. The answer to my question is no, you don't. No. Okay. I'm arguing it with respect to the issue of severance. With respect to whether this was properly brought before the district court, this court held in Campbell v. Rice in 2001, the purpose of the timely objection requirement is to put the trial court on notice. The trial court was clearly on notice here. Briefly, with respect to the issue that Your Honor raised regarding my client's non-appearance and non-appearance of counsel at a critical stage, I mean, this, as Your Honor has pointed out, is a critical stage. We're talking about a motion to eliminate right before trial that my client My client may very well have wanted to join that motion, but it's structural error. The case that I cited in my opening brief with respect to not having counsel at a critical stage is that that's structural error. It's not subject to harmless error analysis. Well, but what, you know, the district judge was faced with the prospect or the situation where the counsel had, there's no question, counsel was fully notified that he was supposed to be there. So it wasn't as if it was kept from him, and he blows the appearance. So is, what is the district judge supposed to do at that moment in time? I think he puts it over and tries to find out why counsel isn't there and orders, you know, issues an OSC and fines him and any other number of things that the judge Of course, that has consequences for the judge's ability to manage the calendar. I mean, that's not a very efficient process. I'm not suggesting you're not right about that, by the way, but at the beginning of this whole process, it is Mr. Chong's counsel's failure. It's not. The court has given him notice and is prepared to proceed, and he has made the decision one way or the other not to show up. It is, and presumably Mr. Chong's counsel received, I mean, presumably he was on ECF and would have received an ECF notice, but my recollection, I could be wrong, my recollection is that the courtroom deputy indicated that she hadn't been able to reach counsel. So I can, if I had a minute, I could check, but that's my recollection. Well, that's even, and so they made an effort to try to get counsel to be present and couldn't even reach that counsel. Well, if they know that he doesn't know about the hearing, I think it's actually even worse because they could certainly continue it for a week and keep trying to reach him. Then finally, just with respect to the curtilage issue, Mr. Chong has adopted all of Mr. Tran's arguments with respect to the curtilage and the motion to suppress, and even if Mr. Tran has. Well, and Mr. Chong has standing to raise those arguments. Right. So I just want to point out, even if Mr. Tran doesn't have a possessory interest in the curtilage, Mr. Chong certainly does. It's a strange argument on the other side, I must say, because Mr. Tran comes in and says, I have no possessory interest in this house at all. It's not a good parole search, as to me. And the judge says, You're right. You've got no possessory interest. And now he's complaining about entry into the curtilage. With respect to your client, he has standing. Right. Thank you. Thank you very much. That's both sides of your argument. The matter is submitted for decision.
judges: Nguyen, Hurwitz, Seeborg